**STATE of Minnesota, Respondent,**

v.

**Francisco ORNELAS, Appellant.**

No. C4–02–1693.

Supreme Court of Minnesota.

Feb. 26, 2004.

John M. Stuart, State Public Defender, Michael F. Cromett, Assistant State Public Defender, Office of the State Public Defender, Minneapolis, MN, for Appellant.

Mike Hatch, Attorney General, Kelly O'Neill Moller, Assistant Attorney General, St. Paul, MN, Earl E. Maus, Cass County Attorney, Walker, MN, for Respondent.

## OPINION

PAGE, Justice.

Appellant Francisco Ornelas challenges the revocation of his probation on a 1994 third-degree criminal sexual conduct conviction. Ornelas's probation was revoked for having unsupervised contact with a minor. The question presented is whether the district court abused its discretion when it revoked Ornelas's probation and executed the 48–month prison sentence imposed but stayed at the time of the conviction. A divided court of appeals affirmed the district court. *State v. Ornelas,* No. C4–02–1693, 2003 WL 1818011, at *2 (Minn.App. Apr.8, 2003). In this appeal,

Ornelas argues that the district court abused its discretion when it revoked his probation because: (1) having no contact with individuals under 18 years of age was never made a condition of his probation on his criminal sexual conduct conviction;[1] (2) assuming that the no-contact provision was a condition of probation, the violation was unintentional; (3) assuming that the no-contact provision was a condition of probation, the violation was excusable; (4) the district court impermissibly based his probation revocation on an accumulation of technical violations; and (5) the policies favoring probation outweigh the need for confinement. We reverse.

During the early morning hours of July 30, 1994, Ornelas sexually assaulted an adult female co-worker by digitally penetrating her vagina without consent. Ornelas was intoxicated at the time of the assault. The state charged Ornelas with first- and third-degree criminal sexual conduct. On December 5, 1994, Ornelas pleaded guilty to third-degree criminal sexual conduct in exchange for the dismissal of the first-degree charge and a recommendation by the state that he receive a stayed sentence. The court sentenced Ornelas to a stayed 48–month prison term and 15 years' supervised probation. As part of the 15–year supervised probationary period, the court imposed the following conditions in writing: (1) that Ornelas was subject to all rules and regulations of the Department of Corrections; (2) that he remain law abiding and of good behavior; (3) that he serve one year in the county jail; (4) that he pay various fines; (5) that he complete a Rule 25 chemical dependency evaluation and follow all recommendations, including all aftercare, and provide collateral contacts; (6) that he follow the recommendations of the sex offender evaluation, including all aftercare; (7) that he have no contact with the victim; (8) that he abstain from the use of alcohol and controlled substances; (9) that he not enter any establishment serving or selling alcohol; (10) that he submit to random drug and alcohol testing; (11) that he have no same or similar offenses; (12) that he complete his GED while in jail; and (13) that he provide a DNA sample and register as a sex offender. A requirement that Ornelas have no contact with individuals under the age of 18 was not included as one of the conditions imposed.

Ornelas's annual progress reports dated April 16, 1996, and January 13, 1997, recommended that probation be continued and listed the same conditions as imposed at sentencing. In June of 1997, Ornelas admitted to violating his probation by consuming alcohol. The court reinstated Ornelas's probation but ordered him to serve 45 days in jail, complete 20 hours of community service at an alcohol recovery center, and pay certain outstanding financial obligations out of his next paycheck. The court ordered that all other terms and conditions of probation remain the same.

Ornelas's annual progress report dated December 11, 1997, again recommended that probation be continued and listed the same conditions as imposed at sentencing. In January of 2000, Ornelas admitted to violating his probation again by consuming alcohol. The court reinstated Ornelas's probation, this time ordering him to serve 60 days in jail with all other conditions of probation remaining the same.

---

**1.** At the time his probation was revoked on the criminal sexual conduct conviction, Ornelas's probation was also revoked on a separate firearms conviction. On appeal, Ornelas did not challenge the revocation of his probation in the firearms matter or whether no contact with individuals under 18 years of age was a proper condition of probation with respect to the firearms offense. Therefore, we will not consider these issues.

On the evening of December 23, 2000, Ornelas's probation agent made a spot visit to Ornelas's home. The agent made the visit based on a call from a concerned person who alleged that Ornelas was using alcohol and drugs and that Ornelas's girlfriend's 14–year–old daughter L.H. was staying at the residence.[2] Ornelas was at home and the agent obtained permission from Ornelas's girlfriend to look around the house. The agent found a gun case containing a 30/30 rifle and ammunition in Ornelas's bedroom. Ornelas admitted the gun was his and admitted to consuming alcohol.

The state charged Ornelas with the felony offense of being a felon in possession of a firearm and violating his probation. On January 31, 2001, he pleaded guilty to a gross misdemeanor firearms possession offense and admitted that he violated his probation by possessing a firearm and consuming alcohol. On February 22, 2001, the probation agent filed a uniform case report addendum. The report recommended that the court reinstate Ornelas's probation in the criminal sexual conduct case under the same terms and conditions. The report also recommended that the court impose the following additional terms: (1) that Ornelas receive credit for 40 days served in jail; (2) that Ornelas follow the recommendation of the Rule 25 evaluation; and (3) that Ornelas "[h]ave no unsupervised contact with children under the age of 18" unless a supervisor approved by the Department of Corrections was present.

On February 26, 2001, a sentencing and probation violation hearing was held. At that hearing, with respect to the firearms charge, the district court imposed a one-year stayed jail term and two years' probation. Ornelas also had to serve 40 days in jail with credit for time served as a condition of probation on the firearms charge. On that charge, the judge imposed numerous other probation conditions, one of which was "no unsupervised contact with anyone under the age of eighteen without agent approval." After delineating all of the conditions of the sentence in the firearms matter, the court stated, "If there is nothing further, the hearing is adjourned."

After adjourning the sentencing hearing, the court said: "On the [third-degree criminal sexual conduct] charge, he'll be reinstated on probation on the same terms and conditions as were previously imposed." While the no-contact provision as stated on the record was included in the written probation agreement for the firearms conviction, the district court did not issue a written modification of the terms of probation in the criminal sexual conduct matter to include the no-contact provision. It is unclear from the record whether the probation agent, on her own initiative, attempted to impose the no-contact provision as a condition of probation on the criminal sexual conduct offense.

On June 24, 2002, Ornelas's probation agent went to the house where Ornelas

2. The violation report indicated that Ornelas understood why he should not reside with the 14–year–old daughter of his significant other. Issues about risk for both parties were discussed and will be elaborated on with the [c]ourt, if the [c]ourt requests. The 14–year–old is a victim in another [c]ourt matter. She has not completed counseling and it was felt that her safety issues were a priority.

This is the first mention in the record of any requirement that Ornelas have no contact with individuals under 18 years of age. The same violation report lists the conditions of Ornelas's probation, and no contact with individuals under 18 years of age is not one of the listed conditions.

and his girlfriend were living. The agent observed Ornelas walking out of the house with his girlfriend, her daughter L.H. who was then 16 years old, and L.H.'s 19-year-old boyfriend. Neither L.H.'s mother nor L.H.'s boyfriend were approved supervisors.

As a result of this unsupervised contact with L.H., the probation agent sought to revoke Ornelas's probation. A probation revocation hearing was held on July 8, 2002, at which Ornelas, his girlfriend, L.H., L.H.'s boyfriend, and L.H.'s grandmother testified on Ornelas's behalf. The essence of their testimony was that L.H. was living with her grandmother but storing her belongings in the house where Ornelas and L.H.'s mother were living and that L.H. would occasionally visit the house while Ornelas was at work. Knowing this, Ornelas would sometimes call home before leaving work to ensure that L.H. was not at the house when he arrived. However, he did not make such a call on June 24, 2002. According to the testimony, on that day, Ornelas's girlfriend's car had a flat tire and L.H. and her boyfriend came to the house to help get the tire repaired. The three went to a garage to get the tire repaired, but the garage was closed for the day and they returned to the house. When Ornelas arrived home, L.H. and her boyfriend were still there. Ornelas asked L.H. and her boyfriend to leave, and after delaying their departure for about ten minutes, they were on their way out the door when the probation agent arrived.

The probation agent testified that when she arrived at the house, Ornelas was walking out of the house with L.H., her mother, and her boyfriend. L.H. and her boyfriend departed and L.H.'s mother went back inside, at which point Ornelas came up to the agent's car. When the agent asked Ornelas for permission to look inside the house, Ornelas responded that L.H.'s belongings were being stored in a bedroom. The two entered the house and Ornelas showed the agent the room where L.H.'s belongings were being stored. The agent observed that L.H.'s belongings appeared to be unpacked, there was a pack of cigarettes and cigarette butts next to the bed, the windows were open, and the room looked as if L.H. was living in it. As a result, the agent arrested Ornelas and petitioned to have his probation revoked. Finally, the agent testified that Ornelas was aware that L.H.'s mother was not an approved supervisor and that she had discussed with him on a number of occasions that he was not permitted to have unsupervised contact with anyone under the age of 18.

The district court found that Ornelas violated his probation because he admitted to being in the presence of L.H. without an approved supervisor. The court revoked Ornelas's probation on both the criminal sexual conduct and firearms convictions, executed the 48-month sentence in the criminal sexual conduct case and the 12-month sentence in the firearms case, and ordered that the sentences be served consecutively.[3] In revoking Ornelas's probation, the court noted that this was Ornelas's fifth probation violation and that he did not seem to understand that he had to follow court orders.[4] The court also re-

---

3. Ornelas filed a motion requesting that the sentences be served concurrently because at the time of the sentencing on the firearms charge the court did not impose a consecutive sentence and a consecutive sentence may not be imposed retroactively. *See State v. Klang,* 320 N.W.2d 718, 719 (Minn.1982). The court granted the motion.

4. The five violations arise out of four separate occurrences, the June 1997 and January 2000 alcohol violations, the December 2000 firearms and alcohol violations, and the June 2002 violation of the no-contact condition.

marked that it believed Ornelas had "been less then candid" in his testimony. Ornelas appealed the revocation of his probation in the criminal sexual conduct matter and, as noted above, the court of appeals affirmed. This court granted Ornelas's petition for review.

A district court "has broad discretion in determining if there is sufficient evidence to revoke probation and should be reversed only if there is a clear abuse of that discretion." *State v. Austin,* 295 N.W.2d 246, 249–50 (Minn.1980). The state has the burden of proving the probation violation by clear and convincing evidence. Minn. R.Crim. P. 27.04, subd. 3. When revoking probation, the district court must: "1) designate the specific condition or conditions that were violated; 2) find that the violation was intentional or inexcusable; and 3) find that need for confinement outweighs the policies favoring probation." *Austin,* 295 N.W.2d at 250.

We begin our analysis with the first *Austin* factor. The specific condition of probation designated by the district court as having been violated by Ornelas was the requirement that he have no contact with any person under 18 years of age. As indicated, Ornelas contends that this requirement was never made a condition of his probation. The state responds that the evidence clearly shows Ornelas was aware of the no contact with individuals under 18 years of age requirement and believed the requirement was a condition of his probation. On that basis, the state argues that Ornelas's failure to raise the no-contact issue below estops him from arguing to the contrary at this stage.

Generally, "this court is most reluctant to address issues that have not been raised at the lower courts." *State v. Sorenson,* 441 N.W.2d 455, 459 (Minn.1989). However, "we have at times opted to review an appellant's claims on the merits in the interests of justice." *Boitnott v. State,* 631 N.W.2d 362, 369–70 (Minn.2001); *see also* Minn. R.Crim. P. 28.02, subd. 11 (stating that the court of appeals "may review any other matter as the interests of justice may require"); Minn. R.Crim. P. 29.04, subd. 11 (stating that "Rule 28.02, subd. 11, concerning the scope of review" applies to appeals to this court from the court of appeals).

Here, it is clear from the record that Ornelas did not raise the no contact with individuals under 18 years of age issue in the district court, in the court of appeals, or in his petition for review to this court. Moreover, Ornelas acknowledged that the no-contact condition was a condition of probation in his brief to the court of appeals and in his petition for review. Ornelas's failure to raise the issue below notwithstanding, the first *Austin* factor requires us to consider the specific condition designated to have been violated. Inherent in our consideration of the specific condition designated as having been violated is the question of whether the condition was actually imposed as a condition of probation.

Further, if the condition was not properly imposed, it would be anomalous to conclude that the first *Austin* factor had been satisfied and go on to consider whether the violation was intentional or inexcusable or whether the policies favoring probation outweigh the need for confinement. *See Austin,* 295 N.W.2d at 250. Thus, if we are to address the *Austin* factors in this case, we must determine whether the no-contact requirement was actually imposed by the district court as a condition of probation. As the Supreme Court said in *Morrissey v. Brewer,* 408 U.S. 471, 484, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972), "Society * * * has an interest in not having parole revoked because of erroneous informa-

tion." The Court's reasoning is equally applicable to revocation of probation. Therefore, to properly consider the *Austin* factors, the interests of justice require that we determine whether the no-contact condition was actually imposed.

■ "The imposition of sentences," including "determining conditions of probation is exclusively a judicial function that cannot be delegated to executive agencies." *State v. Henderson,* 527 N.W.2d 827, 829 (Minn.1995). When sentencing a defendant, a court "[s]hall state the precise terms of the sentence." Minn. R.Crim. P. 27.03, subd. 4(A). In imposing a probationary sentence, "if noncriminal conduct could result in revocation, the trial court should advise the defendant so that the defendant can be reasonably able to tell what lawful acts are prohibited." *Id.,* subd. 4(E)(2). "It is an essential component of due process that individuals be given fair warning of those acts which may lead to a loss of liberty. This is no less true whether the loss of liberty arises from a criminal conviction or the revocation of probation." *United States v. Dane,* 570 F.2d 840, 843 (9th Cir.1977) (citations omitted). When the acts prohibited by the probation conditions are not criminal, "due process mandates that the petitioner cannot be subjected to a forfeiture of his liberty for those acts unless he is given prior fair warning." *Id.* at 844. It follows that before a probation violation can occur, the condition alleged to have been violated must have been a condition actually imposed by the court. 9 Henry W. McCarr & Jack S. Norby, *Minnesota Practice–Criminal Law and Procedure* § 36.47 at 228 (3d ed.2001) (stating "that the condition allegedly violated [must be] *actually imposed* by the judge, and [be] valid") (emphasis added).

■ Relying on the fact that Ornelas was aware of and believed that the no-contact provision was a condition of his probation, the state contends that it met its burden of proving that no contact with individuals under 18 years of age was a condition of Ornelas's probation. The fact that a probationer is aware of or believes something to be a condition of probation does not necessarily make it so. *See, e.g., State v. B.Y.,* 659 N.W.2d 763, 769 (Minn. 2003) (executing a stayed juvenile disposition order based on an admitted curfew violation was improper when the curfew was not made a part of the disposition order). Indeed, the facts of this case are similar to those we held did not support the disposition order violation in *B.Y.*

In *B.Y.,* the curfew requirement was evidently imposed by the juvenile's probation officer and was not part of the disposition order. *Id.* at 766. The district court found that the juvenile admitted failing to meet the required curfew and that missing the curfew constituted a violation of the disposition order. *Id.* We held that "the curfew does not appear to have been part of the disposition order. Therefore, his admission to violating the curfew cannot be the basis for executing his sentence under the rule." *Id.* at 769. Like B.Y., Ornelas's acknowledgement that he was aware of the no-contact provision and his admission that he violated the provision cannot be the basis for revoking his probation if that condition was not actually imposed by the district court.

Here, it is clear from the record that the no contact with individuals under 18 years of age requirement was never imposed by the district court. The requirement is not contained in any district court order or other writing,[5] was not stated as a condi-

---

5. Conditions of probation should be set forth in writing and given to the defendant. *Aus-*

*tin,* 295 N.W.2d at 251; Minn. R.Crim. P. 27.03, subd. 4(E)(3).

tion of probation at the time of Ornelas's initial sentencing hearing, and was never added as an additional condition of probation at any of the probation revocation hearings at which Ornelas's probation was reinstated. To the extent that the state's argument is that the provision was made a condition of probation in the criminal sexual conduct matter at the same hearing that it was imposed as a condition on the firearms conviction, we disagree. At that hearing, the district court had before it the specific recommendation from the uniform case report addendum that the no-contact provision be added as a condition of probation. After explicitly imposing the no-contact requirement as a condition of probation in the firearms case, the district court closed the hearing with respect to that case and took up the criminal sexual conduct probation revocation matter separately. Specifically, the court stated, "On the other charge, he'll [Ornelas] be reinstated on probation on the same terms and conditions as were previously imposed." That language, although not identical, is strikingly similar to the language used to reinstate Ornelas's probation at each of his earlier probation revocation hearings. We therefore conclude that the no-contact provision was not imposed as a condition of probation on the criminal conduct conviction at the February 26, 2001, joint sentencing and probation revocation hearing.

Because there is nothing in the record indicating that the no-contact provision was ever made a condition of Ornelas's probation, we can only conclude that the specific condition designated by the district court as having been violated fails to support the probation violation. In that the no-contact provision was the only basis upon which Ornelas's probation was re-

voked, we also conclude that the state failed to meet its burden of proving a probation violation by clear and convincing evidence, that the first *Austin* factor has not been satisfied, and that the district court abused its discretion when it revoked Ornelas's probation on the criminal sexual conduct offense.[6] Because we conclude that the first *Austin* factor has not been satisfied, we need not address whether the second and third factors were satisfied.

Reversed.

BLATZ, Chief Justice (dissenting).

Because the appellant acknowledges that his probation condition included a no-unsupervised contact with a minor provision and because the appellant did not raise the issue in the district court, the court of appeals, or his petition for review to this court, I respectfully dissent.

In my view, it is incongruous to acknowledge that Ornelas waived the probation condition issue and then proceed to comb the record—or more accurately, the lack thereof—to determine whether the no-contact requirement was actually imposed. Here, the majority recognizes that Ornelas acknowledged that the no-contact condition was a term of probation in his brief to the court of appeals and in his petition for review. Nonetheless, while recognizing that the probation condition was never contested, the majority concludes that "there is nothing in the record indicating that the no-contact provision was ever made a condition of Ornelas's probation."

How or why Ornelas "knew" that such a condition was a condition of probation could have been clarified had Ornelas contested the issue below. Instead, without

---

6. The dissent would place the burden on Ornelas to prove whether the district court imposed the no-contact condition as a condition of probation on the criminal sexual con-

duct offense when, in fact, the district court has the duty to develop the record and the state has the burden of proving the probation violation.

the benefit of a developed record, the majority rules on the issue emphasizing the need for defendants to understand the probationary terms imposed. While I agree that probationary conditions need to be understandable and communicated, there is no evidence that such flaws in the imposition of probation occurred here. We should not equate the waiver of an issue and therefore a lack of a developed record with proof that a condition was not properly imposed.

Finally, it is particularly troubling that the majority's holding rewards litigants who do not raise issues in the lower courts and therefore deprive opposing parties of an opportunity to respond. This injustice is further underscored by the facts of this case wherein Ornelas agrees with the state that the no-contact provision was a probation condition.

For the reasons stated above, I would affirm the lower court's rulings and uphold the district court's revocation of Ornelas's probation. In the alternative, I would remand the case to the district court so that both parties could be heard and a record developed. Such a holding would be more in line with the duty of appellate courts to address the issues presented in a case and not usurp the role of the fact finder. *See* *Haugen v. Peterson*, 400 N.W.2d 723, 726–27 (Minn.1987). I respectfully dissent.