*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-1207**

State of Minnesota,
Respondent,

vs.

Joseph Alan Ohlegren,
Appellant.

**Filed May 26, 2015
Affirmed
Ross, Judge**

Hennepin County District Court
File No. 27-CR-11-2373

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Michael O. Freeman, Hennepin County Attorney, Kelly O'Neill Moller, Assistant County Attorney, Minneapolis, Minnesota (for respondent)

Jeffrey C. Dean, Jeffrey Dean Law Office, Minneapolis, Minnesota (for appellant)

Considered and decided by Kirk, Presiding Judge; Ross, Judge; and Reilly, Judge.

**U N P U B L I S H E D   O P I N I O N**

**ROSS**, Judge

Joseph Ohlegren acquired internet videos depicting prepubescent boys engaged in sex acts. Ohlegren pleaded guilty to possessing child pornography and the district court sentenced him to a prison term that the court stayed subject to probationary conditions.

One condition was that Ohlegren avoid minors and another was that he follow his probation officer's instructions. The district court revoked Ohlegren's probation and ordered him to prison after he used the internet to arrange for a sex encounter with a minor. Because clear and convincing evidence demonstrates that Ohlegren contacted a minor, we affirm.

## FACTS

Police obtained a warrant to search Joseph Ohlegren's computer and found pornographic videos depicting prepubescent boys engaged in sex acts. Ohlegren acquired the videos from the internet. Ohlegren pleaded guilty to one count of possessing child pornography, and the district court sentenced him to prison but stayed the sentence provided that Ohlegren abide by several probationary conditions, including staying away from minors and following all of his probation officer's instructions. Ohlegren violated his probation three times over the next eight months, but the district court did not revoke his probation.

Ohlegren participated in sex-offender treatment at the University of Minnesota. For reasons unknown to this court and not apparent from the record, a psychologist in that program thought it was prudent to advise Ohlegren to "explore" his sexuality. Ohlegren's exploration included using internet dating sites to arrange for sexual encounters with men he met online. The psychologist encouraged Ohlegren to use those sites but later acknowledged that he "never really told [Ohlegren] what he could or could not do" when using them.

Ohlegren's probation officer became concerned with Ohlegren's "exploration" after she discovered that Ohlegren was planning to meet with a "young teen" he had been communicating with for months online. She decided in December 2013 to curtail Ohlegren's internet use. She then gave Ohlegren what she later described as a "clear directive" that "using the [dating] sites for sexual hook-ups only was no longer allowed." She later testified describing this "clear directive" without using the word "only," saying that she told Ohlegren that he could no longer use the dating sites for "sexual hook-ups." But she continued to allow Ohlegren to use several dating sites, warning only that he "proceed with caution" when doing so.

Ohlegren then used a dating website to arrange for a sexual encounter with a boy. The two met in a hotel room, engaged in a sex act, and then ate lunch together. Ohlegren received a text message from the boy the next day. In that message the boy said that he was 17 years old, not 18 years old as he had previously indicated to Ohlegren.

Ohlegren's probation officer learned about the text message and issued a summons for Ohlegren to appear at a probation-revocation hearing. Ohlegren contested the admissibility and reliability of the teen's text message, contending that, as hearsay, it could not constitute proof of the boy's actual age. The hearing veered into a discussion about the restrictions his probation officer imposed, and Ohlegren argued that he received conflicting guidance from the officer about whether he could use the dating websites to arrange for "hook-ups" (meaning sexual encounters) or whether he had to avoid using those sites only if the *sole* purpose of his use was to arrange for these "hook-ups" (that is, "for hook-ups *only*"). Ohlegren's arguments failed to persuade the district court, which

3

revoked his probation after it determined that he had contact with a minor and that he failed to follow all of his probation officer's instructions.

This appeal follows.

## D E C I S I O N

Ohlegren argues that the district court abused its discretion by revoking his probation. A district court has discretion to revoke probation if it finds that the probationer intentionally or inexcusably violated a condition of probation and the violation shows that his need for confinement outweighs the policies favoring probation. *State v. Austin*, 295 N.W.2d 246, 250 (Minn. 1980). The state bears the burden of proving a probation violation by clear and convincing evidence. *State v. Ornelas*, 675 N.W.2d 74, 79 (Minn. 2004).

Ohlegren challenges the district court's finding that he failed to follow his probation officer's instructions. The district court found that Ohlegren failed to abide by the instruction that he not "use any internet sites for sexual 'hook-ups.'" Ohlegren first contends that any probation violation supporting revocation must have "been imposed by the Court" and that the district court never itself prohibited him from using the internet for sexual liaisons. The district court imposed the probation condition that Ohlegren had to follow all of his probation officer's instructions, and the court revoked his probation for failing to follow this instruction. Ohlegren's first argument therefore fails.

This does not resolve the issue, however, because Ohlegren's argument invokes his due process right to fair notice. Due process requires that a probationer be given "prior fair warning" as to what acts would violate his probation. *Id*. at 80 (quotation

4

omitted). The state maintains that Ohlegren had prior fair warning about the internet-use conduct that could lead to his probation being revoked. The record suggests otherwise. As Ohlegren correctly asserts, his probation officer failed to put the challenged restriction into writing. We are left only with the probation officer's testimony characterizing the directive that Ohlegren supposedly violated. She testified repeatedly but conflictingly that she informed Ohlegren both that he could not use the dating websites for sexual "hook-ups" and that he could not use the sites for sexual "hook-ups *only*." The state never asked questions that directed the officer to precisely declare that only one of the conflicting instructions was actually given, leaving the record indicating that *both* were given.

The state takes the position that the apparently conflicting instructions are the same. The position is faulty. Advising a probationer that he may not use internet dating services to arrange for sexual liaisons differs substantially from advising him that he may not use the services *only* to arrange for sexual liaisons. One restriction is absolute, prohibiting specific behavior altogether, while the other is qualified, effectively permitting the restricted behavior so long as it includes additional behavior. If the probation officer had directed Ohlegren not to use the sites to arrange for sexual "hook-ups," then Ohlegren would have violated the directive by using the site to arrange for the sex encounter. But because the record indicates that the officer also directed Ohlegren not to use the sites "for hook-ups *only*," the instruction left Ohlegren to conclude that he would not violate his probation by using the site to arrange both for sexual activity *and* nonsexual activity. And the probation officer's vague warning that Ohlegren should "proceed with caution" when using the dating sites did nothing to tighten the instruction.

The state contended at oral argument that we should not concentrate on these merely semantic differences. It urges us to rely instead on the probation officer's purported intention to prohibit using the internet for *any* sexual "hook-ups." But looking beyond the probation officer's words describing her intention or her understanding redirects us from the proper focus on whether the instruction actually given constitutes fair warning about the acts that would violate Ohlegren's probation.

The state also implied at oral argument that revocation can rest on the fact that Ohlegren's probation officer could have entirely prohibited Ohlegren from using the internet altogether. It certainly would have been prudent to prohibit all internet access to someone who used the internet to acquire pornographic videos of young children and later attempted to meet a young teen. Also prudent would be the lesser restriction of prohibiting access at least to all dating websites. But the state invites us to speculate about circumstances not before us. Here, a psychologist actually directed a man with pedophilic tendencies to "explore" his sexuality, and intentionally or not, a probation officer effectively permitted him to use the internet for sexual liaisons with the only caveat being to "proceed with caution" and to include nonsexual activity. Had Ohlegren been given the clear and absolute directive that the state argues *could have* been issued, Ohlegren would have received a "clear directive" giving him "prior fair warning" about unacceptable behavior. We need not wonder how that case would have been decided.

Despite the weakness of the directive that Ohlegren received about his internet use, we affirm the revocation. Without regard to whether Ohlegren disobeyed his probation officer's instruction that he not use the internet for sexual purposes, it is clear

6

from the record that he failed to obey another of his probation officer's instructions: he contacted a minor. And because the district court itself imposed this instruction at sentencing, Ohlegren's decision to contact a minor means that he violated the district court's directive not to contact minors and the district court's directive that he follow all of his probation officer's instructions because the officer instructed him not to contact any minors. This directive was absolute and unambiguous.

The district court's finding that Ohlegren inexcusably contacted a minor is sufficiently supported by evidence in the record establishing that Ohlegren contacted and had sex with a 17-year-old boy. We reject Ohlegren's contention that the finding of a violation cannot stand because it rests substantially on the hearsay text message sent by the youth about his age. The evidentiary rules prohibiting inadmissible hearsay do not apply to probation hearings. *See* Minn. R. Evid. 1101(b)(3). The admission of hearsay evidence at a probation hearing does not violate a defendant's right to confront witnesses so long as the defendant "can expose potential flaws" in the disputed evidence. *State v. Johnson*, 679 N.W.2d 169, 174 (Minn. App. 2004). The district court entertained Ohlegren's argument that the boy's message was not credible and that the state failed to verify the boy's proffered age. Because the district court allowed Ohlegren to expose potential flaws in the message and contest its reliability, the court did not abuse its discretion by admitting the text message, weighing its reliability, and relying on it.

We also are not persuaded by Ohlegren's credibility argument that, because the boy had previously told Ohlegren that he was 18 years old, his text message revealing that he was actually only 17 cannot constitute clear and convincing evidence of his actual

age. The district court sitting as fact finder had the discretion to weigh the credibility of the boy's representation about his age. *See State v. Dickerson*, 481 N.W.2d 840, 843 (Minn. 1992). And it was certainly not unreasonable to rely on the boy's post-liaison text message as more credible than the boy's prior, pre-liaison representation to Ohlegren that he was 18. Ohlegren does not explain why it was beyond the district court's discretion or beyond reason to rely on the boy's declaration. Because an individual's own statement of his age is clear and convincing evidence that he is the stated age, the district court had an adequate basis to conclude that Ohlegren had contact with a minor.

Ohlegren contends that the remaining *Austin* factors were not met because he did not intentionally contact a minor and merely made an "honest mistake" about the child's age. The contention overlooks that the district court found the violation inexcusable. It also ignores the district court's concern that, because Ohlegren's underlying conviction involved minors and after the conviction he communicated with (and planned to meet) a "young teen" through the internet, he should have been particularly vigilant when he assessed the ages of those he contacted. Ohlegren suggests no reason why he should be excused for this violation after failing to carefully verify the boy's age before meeting with him specifically to engage him in a sex act. The district court rejected the idea that the encounter was an "honest mistake," and it found that imposing a lesser penalty for Ohlegren's fourth probation violation would depreciate the violation's seriousness. These findings have ample support in the record.

**Affirmed.**