*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-0868**

State of Minnesota,
Respondent,

vs.

Darryl Beasley,
Appellant.

**Filed January 19, 2016
Affirmed
Bjorkman, Judge**

Lyon County District Court
File No. 42-CR-13-751

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Rick Maes, Lyon County Attorney, Abby Wikelius, Assistant County Attorney, Marshall,
Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Sara L. Martin, Assistant Public
Defender, St. Paul, Minnesota (for appellant)

        Considered and decided by Larkin, Presiding Judge; Worke, Judge; and Bjorkman,

Judge.

## UNPUBLISHED OPINION

**BJORKMAN**, Judge

        Appellant challenges the revocation of his probation, arguing (1) the state failed to

prove he violated conditions of his probation, (2) any violations were not intentional or

inexcusable, and (3) the district court did not make sufficient findings that the need for confinement outweighs the policies favoring probation. We affirm.

**FACTS**

On March 20, 2014, appellant Darryl Beasley pleaded guilty to second-degree controlled-substance crime and fourth-degree driving while impaired. The district court imposed a 129-month stayed sentence, placed Beasley on probation, and ordered him to serve 365 days in jail. The district court directed Beasley to comply with the standard conditions of probation and to obtain chemical-use and mental-health assessments. Beasley signed and received a copy of the probation agreement, acknowledging that he understood the terms of probation.

Lyon County Corrections Agent Eve DeBaere was assigned to supervise Beasley. Shortly after being released from jail, Beasley requested that his probation be transferred to Blue Earth County because he wanted to move to Mankato. Agent DeBaere completed the transfer paperwork, and the case was assigned to Blue Earth County probation agent Stephen Rick. Under a statewide policy, Agent Rick had 45 days to evaluate the transfer request.

Beasley had difficulty finding stable housing in Mankato. He initially told Agent Rick that he was living on Hilltop Lane in Mankato. Agent Rick visited the residence, found no one home, and left a business card and a note to call him. V.H. called Agent Rick stating that she lived at the address, that Beasley asked to use the address so his probation could be transferred, and that he was not actually residing there. One week after Agent Rick left the note at the Hilltop Lane residence, Beasley called to advise that

2

he was actually living with his boss in Fairmont, but did not intend to stay there long-term. Agent Rick extended the 45-day evaluation period to give Beasley additional time to secure stable housing in Mankato.

Beasley next reported that he was living on North Broad Street in Mankato. Agent Rick stopped by the residence, but no one answered the door. He was concerned about this housing situation because his office had a history with two of the other known residents. Unbeknownst to Agent Rick, M.M., a wanted fugitive, was also living at the North Broad Street residence. The day after Agent Rick attempted to verify the address, M.M. stabbed Beasley numerous times. After the stabbing, Beasley reported to Agent Rick that he would no longer live there, but did not have any other housing options in Mankato. At that point, Agent Rick had been evaluating the transfer request for approximately 90 days.

Agent Rick also had difficulty supervising Beasley during the evaluation period. Beasley missed six scheduled office appointments, and another had to be rescheduled because he was approximately an hour late. Although Beasley contacted Agent Rick via phone or text to reschedule meetings, Agent Rick was still concerned about his ability to properly supervise Beasley. Agent Rick was never able to make contact with Beasley in the field, which he explained was essential when supervising individuals like Beasley who were considered to need a high level of supervision. Agent Rick ultimately denied the transfer request and referred the matter back to Lyon County.

Shortly thereafter, Agent DeBaere filed a probation-violation report. The report alleges Beasley violated his probation terms by failing to (1) maintain contact with his

3

agent as directed, (2) advise probation of his current address, and (3) obtain a mental-health assessment.[1] Agent DeBaere recommended that the district court revoke Beasley's probation and execute his 129-month sentence. At the conclusion of the probation-revocation hearing, the district court determined that Beasley had violated conditions of his probation, that his violations were intentional or inexcusable, and that the need for confinement outweighed the policies favoring probation. The district court revoked Beasley's probation and executed his 129-month sentence. Beasley appeals.

## DECISION

A district court has broad discretion to determine whether there is sufficient evidence to revoke probation and will not be reversed absent an abuse of discretion. *State v. Ornelas*, 675 N.W.2d 74, 79 (Minn. 2004). Before revoking an offender's probation, a district court must "1) designate the specific condition or conditions that were violated; 2) find that the violation was intentional or inexcusable; and 3) find that need for confinement outweighs the policies favoring probation." *State v. Austin*, 295 N.W.2d 246, 250 (Minn. 1980). Revocation "cannot be a reflexive reaction to an accumulation of technical violations but requires a showing that the offender's behavior demonstrates that he or she cannot be counted on to avoid antisocial activity." *Id.* at 251 (quotations omitted).

Beasley argues that the district court abused its discretion because the evidence does not support the finding that he intentionally and inexcusably violated terms of his

---

[1] The state alleged but later withdrew an allegation that Beasley violated his probation by failing to obtain a chemical-use assessment.

probation and that the court failed to make sufficient findings on the third *Austin* factor. We address each argument in turn.

**I.     The evidence supports the district court's findings that Beasley intentionally and inexcusably violated conditions of his probation.**

Beasley first argues that the state did not prove that he violated probation by failing to maintain contact with his probation officer. He acknowledges missing some appointments, but asserts he always attempted to reschedule and maintained contact with Agent Rick via phone. We are not persuaded. The second general condition of Beasley's signed probation agreement required him to "report to [his] agent as directed." It was not enough to merely maintain contact with probation; Beasley was required to report to his agent as directed. The district court found that Beasley violated this condition by repeatedly missing scheduled appointments and failing to comply with requests for in-person meetings. The evidence supports this finding, including Agent Rick's testimony that Beasley's performance while on probation did not meet his expectations.

Beasley also asserts that providing a current address to his agent was not a condition of probation. This argument is unavailing. The third general probation condition required him to "advise [his] Agent prior to making any changes in [his] employment and/or residence." The record supports the district court's finding that Beasley violated this condition multiple times by moving to new residences without first notifying Agent Rick.

Beasley next argues that even if he did violate conditions of his probation, his violations were not intentional or inexcusable because he encountered a "myriad of

5

difficulties" while on probation. He asserts that medical issues made it difficult for him to maintain a job, find suitable housing, and attend meetings with Agent Rick. We are not persuaded. The evidence supports the district court's finding that Beasley was aware of the requirement that he contact Agent Rick before moving, but intentionally or inexcusably violated it by initially providing Agent Rick with a false address and moving multiple times without prior notice. The evidence also supports the finding that Beasley cancelled many meetings with Agent Rick because he prioritized working multiple jobs over complying with probation.

Finally, Beasley contends that he did not understand his obligation to obtain a mental-health assessment. The district court rejected this claim, reasoning that the condition was clearly stated at sentencing and included in the probation agreement. The evidence supports this finding. Both the probation agreement and sentencing order specify that Beasley must undergo a diagnostic assessment at Western Mental Health. Beasley does not contest the fact that he made no attempt to comply with this requirement.

## II. The district court made sufficient, supported findings as to the third *Austin* factor.

In assessing the third *Austin* factor, the district court must balance the offender's interest in remaining at liberty against the state's interest in rehabilitation and public safety, by considering whether:

> (i) Confinement is necessary to protect the public from further criminal activity by the offender; or
> (ii) the offender is in need of correctional treatment which can most effectively be provided if he is confined; or

6

> (iii) it would unduly depreciate the seriousness of the violation if probation were not revoked.

*Id.* at 250-51. We review de novo whether the district court made the required *Austin* findings. *State v. Modtland*, 695 N.W.2d 602, 605 (Minn. 2005).

At the probation-revocation hearing, the district court stated:

> The Court concludes that the need for confinement does outweigh policies favoring probation. [Beasley] has effectively not been on probation by reason of his non-compliance. . . . [C]onfinement is therefore necessary to protect the public from further criminal activity. [Beasley] is also in need of correctional treatment which can most effectively be provided if he is confined and the Court concludes under the facts presented here it would unduly depreciate the seriousness of the violation if probation were not revoked.

Beasley argues that these findings are not sufficient because they do not articulate the court's basis for determining that the need for confinement outweighed the policies favoring probation. We disagree.

When making *Austin* findings, a district court should "seek to convey [its] substantive reason[] for revocation and the evidence relied upon." *Id.* at 608. Here, the district court explained that confinement was necessary because Beasley's level of noncompliance was so high that he, in effect, had not been on probation. The fact that Beasley was essentially unsupervised and had violated numerous conditions of probation supports the district court's determination that confinement was necessary to protect the public and that it would unduly depreciate the seriousness of the violations if probation were not revoked.

Beasley argues that the district court's determination that he was effectively not on probation is "belied by the record." He points out that he was in contact with Agent Rick via telephone and attempted to find suitable housing. This argument is unavailing. The district court acknowledged that Beasley would call Agent Rick "from time-to-time," but failed to comply with requests to appear in person and notify Agent Rick before he changed residences. And it is undisputed that Beasley did not even attempt to obtain the required mental-health assessment. On this record, it was reasonable for the district court to conclude that Beasley was effectively not on probation when his probation agent had an extremely difficult time meeting with Beasley in person and was unable to ever verify where he lived. Supervision is at the heart of probation. Beasley's repeated probation violations made it impossible for Agent Rick to properly supervise him in the community.

In sum, the district court made the required *Austin* findings and did not abuse its discretion by revoking Beasley's probation.

**Affirmed.**