*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A16-0068**

State of Minnesota,
Respondent,

vs.

Peter James Trumble,
Appellant.

**Filed August 15, 2016
Affirmed
Reilly, Judge**

Hennepin County District Court
File No. 27-CR-12-23407

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Michael O. Freeman, Hennepin County Attorney, Elizabeth R. Johnston, Assistant County Attorney, Minneapolis, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Jenna Yauch-Erickson, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Smith, Tracy M., Presiding Judge; Worke, Judge; and

Reilly, Judge.

UNPUBLISHED OPINION

**REILLY**, Judge

Appellant challenges the district court's revocation of his probation and execution of a previously stayed 42-month sentence for first-degree driving while impaired (DWI). He argues that the state failed to prove that he violated a condition of probation. We affirm.

## FACTS

Appellant Peter James Trumble pleaded guilty to first-degree DWI in October 2012. The district court stayed execution of a 42-month sentence and placed Trumble on probation for five years with several conditions. When reciting the conditions of probation, the court stated: "You are ordered not to consume any alcohol or any drugs unless prescribed. If there's a positive test or refusal to submit to testing, then you would be required to complete a chemical health assessment and follow any recommendations for treatment or care recommended by probation." Trumble and the court signed a sentencing order stating that the conditions of probation included "[d]o not use any alcohol or illegal or non-prescribed mood-altering drugs; testing as Probation determines" and "[i]f there is a positive test or a refusal to submit to testing, then, *at a minimum*, complete a chemical health assessment and follow all recommendations as directed by Probation." The court also signed a warrant of commitment stating that the conditions of probation included "[n]o alcohol/controlled substance use."

The corrections department filed a probation-violation report in June 2013, asserting among other violations that Trumble violated conditions of probation by consuming alcohol. Trumble admitted that he violated a condition of probation by consuming alcohol,

and the court ordered him to complete chemical-dependency treatment and continue on probation. During a review hearing, Trumble admitted that he left treatment before its completion and agreed to submit to urinalysis. The court placed him at the workhouse or on other monitoring as available pending a chemical-health assessment and the next review hearing. During the following review hearing, the district court ordered Trumble to complete a new chemical-dependency-treatment program.

The corrections department filed a second probation-violation report in February 2014, asserting that Trumble violated conditions of probation by failing to complete chemical-dependency treatment and abstain from consuming alcohol. Trumble's probation officer claimed that Trumble had "submitted positive/diluted urine samples" 13 times since the previous review hearing. During a failed attempt to resolve the violation without a contested probation-violation hearing, Trumble admitted that he "provided a number of UAs that were diluted" and stated "I guess in the eyes of the court and the law, it's positive." Trumble admitted during a subsequent hearing that he violated conditions of probation "by failing to complete [his] treatment program," "us[ing] alcohol while . . . on probation," and "provid[ing] either positive or diluted urine samples [on] a number of dates." Trumble's probation officer then mentioned that he "did talk to [Trumble] about the dilute UAs . . . several times and about . . . what a diluted UA is." The district court ordered Trumble to serve one year on electronic-home monitoring and to continue on probation.

The corrections department filed a third probation-violation report in June 2015, asserting that Trumble violated a condition of probation by "[p]rovid[ing] [p]ositive [d]rug

3

[s]creens" through "diluted drug tests" nine times. The corrections department filed an amended report pending a contested probation-violation hearing, asserting that Trumble was continuing to "[p]rovide[] [p]ositive [d]rug [s]creens" by "submit[ing] diluted drug tests" and that he submitted one test that "was positive for alcohol."

During the contested probation-violation hearing in October 2015, the district court received a report indicating that Trumble had one positive test in August 2015 and 15 drug-test results of "POSSIBLE DILUTE" due to low creatinine levels between February and August 2015. Trumble's probation officer testified that Trumble was "continu[ing] to submit diluted urine specimens" and had "a positive drug test for alcohol" in August 2015. The probation officer testified that a test result of "possible dilution" is "consider[ed] . . . a positive specimen" because the result indicates a "low creatinine level," which "means . . . that someone is trying to flush their system, and by drinking a large amount of liquids . . . my understanding is it's harder for technology to detect if there's any drugs in the system." A supervisor of the drug-testing and drug-court unit of the corrections department testified that creatinine is "a naturally occurring substance in human urine, and if it is below the level that's the standard testing level . . . then it would be considered positive for possible diluted sample." The supervisor testified that a test result of "possible dilute" is "consider[ed] . . . a positive sample" because the sample is "invalid . . . and by not submitting a valid sample it would be considered positive." The supervisor acknowledged that a medical condition may "contribute to this type of sample being provided" but stated that "we leave that up to the individual to bring . . . his medical proof or medical condition

4

. . . to the probation officer" and that, "as far as [he] kn[e]w," Trumble "never provided any medical information."

The district court stated that "given the history in this case I think it is a reasonable conclusion to draw that [Trumble's urine samples showing results of possible dilute were] diluted given the prior violations in this case" and that "the numerous instances . . . of possible dilutions are sufficient to show a pattern of possible dilutions that makes me believe that it was actual dilution." The court found that Trumble "violated the term of his probation that requires him to abstain from the use of alcohol and drugs and that especially because it involves dilution, that it was intentional and not excusable and repeated in the past." The court further found "that the policies favoring probation give way to the need for confinement," reasoning, "I do view dilution of samples as in effect a fraud on the court. And so a person who does that is really not amenable to probation because there's no trust between the probation officer and the probationer as well as the court . . . ." The court executed Trumble's prison sentence. This appeal follows.

**D E C I S I O N**

Trumble argues on appeal that "[t]he district court did not impose a drug testing condition on [him]" and that the prosecutor and his probation officer simply "assume[d that he was] subject to such a condition." Alternatively, Trumble argues that "the district court never imposed any condition related to the dilution of urine samples nor was [he] ever informed by the court that his probation could be revoked based on 'diluted' drug test results," and therefore his submission of diluted samples was not a probation violation.

5

The state has the burden of proving a probation violation by clear and convincing evidence. *State v. Cottew*, 746 N.W.2d 632, 636 (Minn. 2008). "[B]efore revoking probation, the court must: '1) designate the specific condition or conditions that were violated; 2) find that the violation was intentional or inexcusable; and 3) find that [the] need for confinement outweighs the policies favoring probation.'" *State v. Finch*, 865 N.W.2d 696, 704-05 (Minn. 2015) (alteration in original) (quoting *State v. Austin*, 295 N.W.2d 246, 250 (Minn. 1980)). "A district court has 'broad discretion in determining if there is sufficient evidence to revoke probation and should be reversed only if there is a clear abuse of that discretion.'" *State v. Modtland*, 695 N.W.2d 602, 605 (Minn. 2005) (quoting *Austin*, 295 N.W.2d at 249-50). "Inherent in [an appellate court's] consideration of the specific condition designated as having been violated is the question of whether the condition was actually imposed as a condition of probation." *State v. Ornelas*, 675 N.W.2d 74, 79 (Minn. 2004).

A district court pronouncing a sentence must "[s]tate precisely the terms of the sentence." Minn. R. Crim. P. 27.03, subd. 4(A). If the court stays execution of the sentence and "lawful conduct could violate the defendant's terms of probation, the court must tell the defendant what that conduct is." *Id.*, subd. 4(E)(3).

> It is an essential component of due process that individuals be given fair warning of those acts which may lead to a loss of liberty. This is no less true whether the loss of liberty arises from a criminal conviction or the revocation of probation. When the acts prohibited by the probation conditions are not criminal, due process mandates that the petitioner cannot be subjected to a forfeiture of his liberty for those acts unless he is given prior fair warning. It follows that before a probation

6

> violation can occur, the condition alleged to have been violated must have been a condition actually imposed by the court.

*Ornelas*, 675 N.W.2d at 80 (quotations and citations omitted).

Trumble's more general argument—that "[t]he district court did not impose a drug testing condition on [him]"—is without merit. Trumble and the court signed a sentencing order that stated that "testing as Probation determines" was a condition of probation. And during the sentencing hearing the court discussed potential consequences of "a positive test or refusal to submit to testing."

Trumble's principal argument is that the district court did not inform him that submitting urine samples that were not diluted was a condition of probation, that diluted samples would be viewed as positive for the presence of a drug or alcohol, or that submitting diluted samples was a probation violation. Trumble therefore maintains that submitting diluted samples was not a probation violation. But the court actually found that Trumble "violated the term of his probation that requires him to abstain from the use of alcohol and drugs" and based this finding on the diluted samples and Trumble's history. Trumble does not dispute that abstaining from consuming alcohol and non-prescribed drugs was a condition of probation, nor does he assert that he did abstain from consuming alcohol and non-prescribed drugs.

Moreover, the corrections department could implement the probation conditions that Trumble abstain and submit to testing by interpreting a test result of "possible dilute" as a positive test. "Determining conditions of probation is exclusively a judicial function that cannot be delegated to executive agencies." *State v. Henderson*, 527 N.W.2d 827,

828-29 (Minn. 1995). However, "some flexibility in the administrative implementation of probation conditions is desirable and . . . trial judges should not be burdened with administrative issues relating to the implementation of conditions of probation." *Id.* at 829; *see also State v. Bradley*, 756 N.W.2d 129, 133 (Minn. App. 2008) (stating that "under *Henderson*, administrative implementation of probation conditions is appropriately delegated to an administrative body" and concluding that court could permit chemical-health assessor to determine whether appellant needed treatment and appropriate type and level of treatment); *State v. Anderson*, 720 N.W.2d 854, 863 (Minn. App. 2006) (concluding that probation department could compel appellant to sign agreement requiring him to "remain law abiding, avoid possessing firearms or illegal narcotics, inform his probation officer before leaving the state, and submit to searches of his residence"), *aff'd on other grounds*, 733 N.W.2d 128 (Minn. 2007).

The corrections department interprets a diluted urine sample as an invalid and positive sample due to the unreliability of testing a diluted sample, and dilution is seen as intentional unless a probationer provides a medical reason for the dilution. The record reflects that Trumble was well aware of this interpretation. The district court's failure to specifically inform Trumble about the consequences of a diluted urine sample did not preclude the court's finding that Trumble violated a condition of probation.

**Affirmed.**